All right, you have ten minutes. Did you want to reserve any for rebuttal? Yes, Your Honor. I'd like to reserve two minutes for rebuttal. All right. You can proceed then. Your Honor, I think the... Wait a second. We can't really see you, Mr. Wetmore. Yes, I'm back, Your Honor. I was just being seated so I could take notes during the opening argument. Is that it? Okay, okay, but we can't see you, but that's fine. Okay, I can be here. That's no problem at all. Okay, that'd be better. Thank you. Go ahead. Your Honor, I think the statute in question is unambiguous, and the mistake that the Board of Immigration Appeals made is interpreting the requirement that the seven years, requisite seven years of good moral character, that terminates upon filing of the application. But that's just got to be counterintuitive from the standpoint because then if you file the application, and you could just lie up and say whatever you wanted and get asylum or relief under NACARA, why would they say that? So now you file the application and now perjury abounds and let's go for it and come up with the best case that you can regardless of whether it's the truth or not? Well, Your Honor, I don't think that gives an alternative interpretation, would not provide a clean slate for an applicant to commit perjury or lie. The asylum applications and other forms of relief in immigration court can still be denied for a lack of credibility and also in the court's discretion. So what I'm arguing is specifically that the period of the seven-year period for good moral character terminates on actual filing the literal meaning of the terminology used in the statute, the filing of the application, not adjudication of the application. So if he committed a murder after that, all's good? Well, there would be an additional ground for deportation and I think that an aggravated felony would pretermine any forms of relief. But that you can lie and no problem after you file the application? Specifically on the ground of good moral character, yes. Do I understand from you that they could have denied, they could have said, we don't believe you, you're a liar and therefore because you're a liar, you gave these two inconsistent statements, one I believe to the asylum officer who interviewed him and then one at the proceeding, we're going to deny your application? They could have said that? I believe that an ACARA application can be denied in the court's discretion. So they didn't have to rely, they did not have to rely on this particular statute, and your argument is that was the mistake because the statute is clear? Yes, it's unambiguous, Your Honor, and I think that Chevron deference applies or should apply to the board's decision. Well, wait a minute. If it's unambiguous, we don't ever get to Chevron, do we? Chevron only applies if the statute's ambiguous and then you look to the agency's construction. I'm sorry. I've misstated that. It should not go to the next level of interpreting it in the context of other statutes. It is unambiguous. All right. Well, so that we don't have a Chevron issue. But basically your argument depends wholly on ACARA, right? That's correct. Okay. So is there any case law? Obviously we don't have any case law in the Ninth Circuit. This is a matter of first impression on whether this is a continuing requirement as opposed to the good moral character at the time that the application is taken. Do you agree with that? I agree. The only case law that supports my position is the Eighth Circuit case, Quadra. Well, now unpublished Ninth Circuit cases, I think Judge Smith was on a panel in Chinchilla v. Holder that held that substantial evidence supports the agency's determination that Chinchilla provided false testimony to an immigration officer for the purpose of obtaining an immigration benefit and, therefore, is statutorily barred from demonstrating good moral character. It's not a published opinion, but it's an unpublished opinion here, right? Are you aware of that case? I'm not aware of that. I'm afraid you are. Okay. So that particular unpublished, I think, says found someone ineligible for special rule cancellation of removal under NACARA precisely for the same reason that this case did. I would argue, as with Ortega Cabrera and Castillo-Cruz,  But you would agree, I gather, that if there is a continuing requirement, your client loses. Is that a fair statement? If the court also upholds the finding that it was done for the purpose, that the false testimony was done for the purpose of obtaining an immigration benefit, then. But realistically, we have an issue, as far as the published opinion is concerned, we have an issue of first impression in the Ninth Circuit to the effect that NACARA, the good character requirement, either occurs one time when the application is filed or it's continuing until the seven-year period is over. Is that fair? I think that's the issue. That's correct. Your Honor, I wanted to. Well, even if you didn't, let's just say we agree with you on that. The issue of whether your client was a persecutor could still be a problem for him if it were remanded back, correct? If the court made that finding, I don't believe the court did make that finding. Well, but if it wasn't complete for this court to do it, it could be remanded back on that issue, because the court didn't specifically rule on that, right? I don't believe the court did. And there was evidence that he might have been one of the persecutors. And under NACARA, if you're a persecutor, you're not eligible for relief, correct? I believe that's true. I think as far as that goes, he testified extensively about belonging to the Guatemalan military. Well, there's kind of a variance in the evidence about whether he says, well, maybe one soldier, one to three guerrillas, and then there's some indication that it could have been 65. And if it were 65, then he might be one of those people that doesn't qualify under NACARA, correct? I think it's a question of fact whether he participated in the arrest or was merely present for them, or whether the arrest actually constituted persecution. Well, I guess what I'm saying is if you were to prevail on this argument, you're still not home free on that one. That would have to be. They could still be remanded and explored on that, correct? I believe the immigration court could make a ruling on that, correct. Do you want to save the balance of your time for rebuttal? You're at two minutes. I think that would be good, Your Honor. Do you want to save it? Yes, I would like to. Oh, okay, thanks. I'm sorry, I didn't notice. All right, so if you want to, you can sit, and then we'll hear from the government. Thank you. Please record, David, one more thing. You're kind of cutting in and out a little bit. Let us get an adjustment here before. Say your name and appearance again. David Whatmore for the Attorney General, Your Honor. Okay, that's good. Go ahead. Okay, Your Honor, I believe you actually hit the nail on the head when you said that the result of finding this statute not to be, one, ambiguous, and, two, not to be a continuing evaluation would lead to absurd results. Every court, except for the Eighth Circuit, who has addressed this, has found that way. And, in fact, to address Judge Smith's question regarding whether this is actually an issue of first impression, to find statutes of this kind after the passage of ARERA to be a continuing application process, I would point the court to Castillo-Cruz, which is at 581 Fed 3rd, 1154, cited in 2009. In that case, this court stated that because of, I should back up, that was actually a cancellation of removal case, substantially similar but for the stop time rule, that's not an issue in the NACARA statute. This court actually said that because the agency relied on a conviction that occurred more than 10 years after the final agency decision, that that was no longer, that decision could no longer be relied upon. In other words, because it was a continuing period of time, the agency could not rely upon a conviction that was more than 10 years prior to the date of the final agency decision. Therefore, as the second... Counsel, let me ask you, what was the cite on that again, Castillo-Cruz? Absolutely, it's 581 Fed 3rd, 1154. And was that a NACARA case? No, that was a cancellation of removal case. Isn't that really the distinction here? I mean, if it's not a NACARA case, then you pretty much win hands down in terms of the continuing violation. But it seems to me, what we're looking at is whether NACARA is plain on its face and whether that plain language gives comfort to the petitioner in this situation. The case, I've not looked at Castillo-Cruz because it wasn't a NACARA case, but you think that that informs our judgment on a NACARA case? I would submit that it does, Your Honor. It shows that even after the passage of ERIRA and even after the implementation of the stop time rule, that these cases were continued to be treated by this court as well as by the board in the same way. That the period for establishing both tenuous presence as well as good moral character is, in fact, a continuing period that ends with the issuance of the final board decision and then looking back. In the case of NACARA, you're only looking back seven years. In the case of cancellation of removal, you're looking back ten years. And I think once we look at that operative language there, the date of such application, as every court that's addressed it except for the Eighth Circuit has found, that language is ambiguous because there is, in fact, no definition of when such an application is followed. But that's not the language of the statute. It says, has been a person of good moral character during such period. And at least it seems clear to me that that's not ambiguous. Now, it may be there's another rule of statutory construction that a court should try and avoid absurd results. And that's a separate issue, but I don't see this as being terribly ambiguous. But in terms of whether the result reached is absurd, could they have denied his application simply because they said they don't believe his testimony that he either lied to them or he lied to the first person who interviewed him? And could they, instead of relying, did they have to rely on the good moral character prong, or was there another basis if, in fact, he had lied for them to deny his application for relief? Was there another basis based on the false testimony? Could you answer that yes or no? The answer would be yes. It could have been denied as a matter of discretion. And if that was the case, then the decision would be unworthy. So the answer is yes. Then the result is not necessarily absurd. I mean, if your answer was no, that would have been another story. But if they could have denied it anyway, then there's no absurd result at all. And I would be willing to accept the proposition that the statute shouldn't be construed that way if it would lead to a served result, even if it was clear. But I don't see any ambiguity in the statute on its face. And if you look at the actual language here that my colleague just indicated, if you look at sub 2, which precedes, obviously, sub 3, which has the relevant language, it says the person has been physically present in the United States for a continuous period of not less than 7 years, immediately preceding the date of such application, and then 3 is has been a person of good character during such period. So it's the 7 years immediately preceding the date of the application. So I guess what I'm struggling with is it doesn't seem ambiguous to me. It seems pretty straightforward. And it suggests that it's for the 7-year period prior to the application rather than a continuing period. If that's correct, what do we do in this case? Well, Your Honor, I don't believe it's correct, and I don't believe it's correct for two reasons. First, the date of such application. That wasn't the question. If it's correct, what do we do? That was the question right now. You had a hypothetical, not whether you think it's. We know you don't think it's correct. But if it's correct, what's left on this record? The immigration judge, one of the things the immigration judge couldn't say that he qualified because he didn't know if he was a persecutor or not. Is that enough on this record to deny relief? That I don't know, Your Honor. Does it have to go back? Well, no, because we would submit that the date of such application would have actually been, reading it as the final time in which he signed that application and submitted it to the court, would actually be the same day in which he offered his testimony to the immigration judge. No, but isn't there a separate, but there's a separate, you have to not be a persecutor to get Nicara relief, right? That is one of the bars, yes. All right. Is the record sufficient here in terms of, because I think the immigration judge said, I can't tell whether you were a persecutor or not, you know, and did the immigration judge make a finding that the petitioner here didn't meet that, you know, didn't meet that? No, Your Honor, that finding was never made. And I think the really core question here is we have to look at what was, if we say, the date of such application, and we read that literally, there are multiple points during the actual submission and signing of the application that could be considered the date of such application. There are at least four in this case. The first would be the time that the paper was physically submitted to the agency itself. He submits it for the first time. Then when he goes and he conducts his interview with the asylum officer, he is asked to make any amendments. He made amendments. He then signed that paper again. After that was decided, he was offered an opportunity to submit another application to the immigration judge, which he did. And then on the date he actually gave testimony, which is January 7th of 2009, he was asked by the immigration judge at pages 106 through 108 of the record to please review it, make any additional changes, make any additional amendments, and then submit your application again. So, therefore, if we just simply read this as the final date on which he submitted this application to the agency, if we read the language completely literally, it would actually be on the date, January 7th, 2009, that he last signed the document. That actually comports with his decision in Garcia. Therefore, I'm sorry, I didn't mean to. So, in other words, from your perspective, application would be the latest date of an amendment or a substituted application? It would be one way in which that language could be read, and it's another reason why the language is, in fact, ambiguous. But I thought, so now you're saying what's ambiguous is the words the date of such application, not the second word. That's correct. Not three. So it's the ambiguous part is the date, immediately preceding the date of such application, and that's what's ambiguous. You're saying one way to read the date of application is the date of your hearing. I would say that it's a continuing process. It lasts until the final agency decision, and that's what every other court has held it to be, because they can't pick a time on which this eventually cuts off. But were it to be read to only mean that it was the final time that the petitioner signed his name and submitted something to the court, it would actually be on the same day that he offered his – I see that my time has run. I finished my response. Go ahead. Yes, it would actually be on the same date that he gave his false and intentionally false testimony. So, therefore, the result in this case would actually be the same. The Garcia case actually points that out at the end of its decision, where it talked about if the individual signs it, again, on the date that he testifies, that application, as contemplating what would be a filed date, the final filed date, even though it's not defined in the regulations, could be considered to be that date. And if it would be considered to be that date, then the testimony, the intentionally false testimony that led to the lack of good moral character finding, would be on that same day and, therefore, within the seven-year period. And, again, petitioner would lose, even if the court found that the language was not unambiguous. Okay, thank you, counsel. In other words – Let me see if any of my colleagues have additional questions. I just have one question. Counsel, are you aware of any case that construes the word – the meaning of the word application in this statute in the way that you are construing it? Yeah, well, I would look to the Seventh Circuit's recent decision, which we provided a Rule 28J letter on, Duran-Ortiz, which is at 698 Fed Third 523. Judge Mannion provides a very nice textual analysis of why that reading is, in fact, correct, why it must be accorded that meaning within the statutory purpose, as well as to effectuate congressional contempt. And that case construes the word application? Construes the phrase date of such application, yes. Okay. It's construing – it's a NACARA case, construing the exact language at issue here. Just – I have one other question. I know that the NACARA people – there was a sunset on the people that would be eligible, so we're sort of seeing – I mean, there still are cases floating around. Are there very many still floating around? You're correct, Your Honor. It is a distinguished – or a diminishing number of people. So, yes, there are a few that are still around that have still been in the system for a while, and that was one purpose of not changing the NACARA statute with ARERA and leaving the seven-year periods, leaving it as a continuing application. That's what Congress exactly was contemplating, to give the folks the last tail end of the NACARA folks the same opportunity and not change it up in the middle of the game for them. If you look at this court's decision in – I'm going to butcher the name – Menascus, which is at 432 Bed 3rd, and the pin site is 1071, it talks about what the change was in NACARA and why Congress did not, in fact, change really anything about the statute, even though it's phrased as special rule cancellation of removal versus suspension of deportation. Okay, thank you. Can I ask one more question? Sure. We have one more question for you. How did the BIA construe this language immediately preceding the date of such – seven years immediately preceding the date of such application? How did they construe it in this case? It would be, as we suggested, that it is a continuing application process and that the final agency decision is, in fact, the stop time for determining what the date of such application is, what that period would run to. This positive case, from the board's perspective, is a matter of Garcia 24. No, no. I'm asking you in this case, what did they say? Yes. Did they say that the requisite seven years of good moral character did not end the date that Aragon filed his application, which would indicate that they're not construing it the way you suggest? They construed it, as I'm urging, as a continuing application, not as the final date on which he filed it. I was merely urging the final date of signature as an alternative analysis. If we wanted to look somehow as a filed date, if we wanted to put that point on it, we could look to the final time that he actually submitted something to the court. I would urge that such an analysis, because it's inconsistent over many, many different cases, would not be the way to read it because it would result in ambiguity versus when the final filing takes place. Rather, that if we look at it with a bright-blind rule to say the final agency decision constitutes the stoppage of the seven years, and you look back seven years from the final agency decision, we have a nice, clean period. It makes sense. It comports with congressional intent, and it comports with this court's decision in Castillo-Cruz, where they clearly recognize that that period applies in the cancellation of removal context, which has almost identical language except for the 10-year rules and the stop time rules. It has the exact same language of date of such application and during such period. It's interpreting the exact same language and reaching the result that we suggest, and it's a continuing application. Thank you. Thank you, Your Honors. All right. You have a little over two minutes for rebuttal. Thank you. Thank you. Your Honor, first of all, as far as absurd results go, if the court interprets the statute as being a continuous application, the problem is that that subverts Congress's intent to set a specific seven-year period, because when the application is filed, then the Homeland Security officer will look to the seven years preceding the filing date. But, counsel, hasn't the government raised an important point, though, in this case? As I understand it, your client actually submitted a new application, withdrew the old application at some point, submitted a new one, and if I understood correctly, the government's contending that there was yet again a new application. Doesn't that affect their analysis in some way? I agree with you. If you have one application, it makes a whole lot of sense. But if he actually withdraws the other application, submits a new one, then how are we supposed to construe the timing? Well, Your Honor, I disagree that it constitutes a new application. The practice in immigration court is to allow amended applications and proceedings. And I get that. There was an amendment, if I understood the government correctly. But I thought he said, and I'd be interested in your take on this, that there was, in effect, a whole different thing. It's a concept like a superseding indictment. This is not an indictment, obviously, but the old application was withdrawn and a new one submitted. Not the amendment, which was the second thing that occurred, but rather the third thing, where the application was withdrawn and a new one submitted. Do you say that didn't happen here? Your Honor, as I recall, the asylum application was withdrawn. So you're saying that the application that's covered by this statute was never withdrawn. Is that what you're saying? I believe that's correct. All right. So to conclude a point, if it is treated as a continuing application, the seven-year period gets extended by seven years because there's the initial seven-year period that the USCIS officer will consider it as. And then if it goes to immigration court, then that's an additional few years. If necessary, if it goes to the Board of Immigration Appeals, that's additional years, perhaps a remand. It ends up being much longer than seven years. And it's hard to be well-behaved for that long? Well, I think that congressional intent was for good moral character to be specifically seven years. Okay. I think we've depleted your time, and thank you both for your argument. This matter will stand submitted.
judges: Korman, Callahan, Smith